# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00447-CV

---

**J. G., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY**
**NO. 18-0013-CPSC1, THE HONORABLE BRANDY HALLFORD, JUDGE PRESIDING**

---

## O P I N I O N

J.G. (Father) appeals from a judgment terminating his parental rights to his children, T.G. (aged eleven) and A.G. (aged ten).[1] Father, who was imprisoned throughout the case, challenges the denial of his motions for continuance and for issuance of a bench warrant to allow him to attend the trial in person. He also challenges the legal and factual sufficiency of the trial court's findings that he committed several statutory grounds for termination and that termination is in the best interest of the children. *See* Tex. Fam. Code § 161.001(b)(1), (2). We will affirm the trial court's judgment.

---

[1] We refer to the children and their family members by their initials or an alias. *See* Tex. R. App. P. 9.8 (relating to protection of minors' identity in appeal of cases involving termination of parental rights).

## BACKGROUND

In February 2018, the Department of Family and Protective Services (the Department) removed the children from the care of their mother, A.K. (Mother), after receiving referrals alleging she used drugs extensively, sold drugs from the home, and neglected the children's basic needs. The Department placed the children with their adult sister, "Cady," and filed a petition to terminate the rights of both parents. Mother and the Department reached a mediated settlement agreement calling for Cady to be appointed permanent managing conservator with Mother retaining conditional visitation rights. The Department's case against Father proceeded to a bench trial.

At the beginning of trial, Father's counsel made an oral motion for continuance and requested that the trial court issue a bench warrant to enable Father to attend in person. The trial court denied the motions and proceeded to the merits. The Department presented testimony from Mother and Department caseworker Michelle Carpenter. Tiffany Jayne, a volunteer with the Court Appointed Special Advocate program, testified for the children's attorney ad litem. The trial court found by clear and convincing evidence that Father committed four statutory grounds for termination and that termination was in the best interest of the children. *See id.* § 161.001(b)(1)(D), (E), (O), (Q), (b)(2). Father timely appealed.

## CONTINUANCE

Father initially challenges the trial court's denial of his motions for a continuance and for issuance of a bench warrant. We review both rulings for an abuse of discretion. *See In re Z.L.T.*, 124 S.W.3d 163, 164 (Tex. 2003) (bench warrant); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002) (continuance). A trial court abuses its discretion

if it acts "without reference to any guiding rules and principles." *Bennett v. Grant*, 525 S.W.3d 642, 653 (Tex. 2017).

Trial courts may not grant a continuance "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251. When a movant fails to comply with the affidavit requirement, reviewing courts generally presume the trial court did not abuse its discretion by denying the motion. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *Zeifman v. Nowlin*, 322 S.W.3d 804, 812 (Tex. App.—Austin 2010, no pet.). Father did not file an affidavit in support of his oral motion, but he argues that a continuance was required by law because he was entitled to a bench warrant to attend the trial.

"All litigants forced to settle disputes through the judicial process have a constitutional right to be heard at a meaningful time in a meaningful manner." *In re L.N.C.*, 573 S.W.3d 309, 324 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Although inmates cannot be denied access to the courts simply because they are inmates, they do not have a constitutional right to appear in person in every court proceeding. *In re Z.L.T.*, 124 S.W.3d at 165. Rather, courts must weigh the inmate's right of access against protection of the integrity of the justice system. *Id.* Courts consider a variety of factors when determining whether to grant a request for a bench warrant, and the inmate bears the burden to provide information justifying the need for his presence.[2] *Id.* at 165–66. Father's counsel told the trial court that he received a letter from

---

[2] Trial courts deciding whether to grant an inmate's request for a bench warrant are to consider factors including: the cost and inconvenience of transporting the prisoner to the courtroom; the security risk to the court and public posed by the inmate; whether the inmate's claims are substantial; whether resolution of the litigation can reasonably be delayed until the inmate's release; whether the inmate can and will offer admissible, noncumulative testimony that cannot be presented by deposition, telephone, or some other means; whether the inmate's presence will facilitate judging his or her demeanor or credibility; whether trial is to the court or

3

Father stating that he "wanted to be bench warranted," but he did not explain why Father's interest in appearing outweighed the impact on the justice system. On this record, the trial court did not abuse its discretion by refusing to issue a bench warrant. *See id.* at 166 (holding denial of bench warrant was not abuse of discretion when inmate "failed to provide any factual information" justifying need for his presence).

Further, to the extent Father's briefing can be construed to complain about the trial court's failure to allow him to participate through an alternative means,[3] we conclude the trial court did not abuse its discretion in not making such arrangements. When a trial court concludes an inmate is not entitled to appear in person, the court must consider allowing the inmate to participate "'by some other effective means,' such as by affidavit, deposition, or telephone." *Samaniego v. Office of the Attorney Gen. of Tex.*, No. 03-13-00014-CV, 2015 WL 1545933, at *2 (Tex. App.—Austin Apr. 3, 2015, no pet.) (mem. op.) (quoting *Larson v. Giesenschlag*, 368 S.W.3d 792, 798 (Tex. App.—Austin 2012, no pet.)). However, the inmate has the sole burden "to request access to the court through these alternate means and to demonstrate why a trial court should authorize them." *Brown v. Preston*, No. 01-16-00556-CV, 2017 WL 4171896, at *3 (Tex. App.—Houston [1st Dist.] Sept. 21, 2017, no pet.) (mem. op.) (citation omitted); *accord Vodicka v. Tobolowsky*, No. 05-17-00961-CV, 2017 WL 5150992, at *1 (Tex. App.—Dallas Nov. 7, 2017, no pet.) (mem. op.); *Ulloa v. Rodriguez*,

---

a jury; and the inmate's probability of success on the merits. *In re Z.L.T.*, 124 S.W.3d 163, 165–65 (Tex. 2003).

[3] Father did not raise the issue of alternative participation in his brief to this Court. However, we must treat every issue "as covering every subsidiary question that is fairly included." *Anderson v. Durant*, 550 S.W.3d 605, 617 (Tex. 2018) (citing Tex. R. App. P. 38.1(f)). We will assume without deciding that Father's appellate issue fairly includes the issue of whether the trial court should have allowed him to participate in another way.

No. 04-15-00160-CV, 2016 WL 147265, at *1 (Tex. App.—San Antonio Jan. 13, 2016, no pet.) (mem. op.); *In re T.R.C., Jr.*, No. 13-11-00616-CV, 2012 WL 3537828, at *3 (Tex. App.—Corpus Christi Aug. 16, 2012, no pet.) (mem. op.); *In re C.N.M.*, No. 10-10-00178-CV, 2011 WL 1049383, at *2 (Tex. App.—Waco Mar. 23, 2011, no pet.) (mem. op.); *Baugh v. Baugh*, No. 14-07-00391-CV, 2008 WL 2068081, at *2 (Tex. App.—Houston [14th Dist.] May 15, 2008, no pet.) (mem. op.). The trial court has no "duty to go beyond the bench warrant request and independently inquire into the necessity of an inmate's appearance." *See In re Z.L.T.*, 124 S.W.3d at 166. Father made no request to appear through alternate means, and he provided no factual information demonstrating why his personal appearance via alternate means was necessary in addition to his counsel having appeared for him in the trial court. On this record, we cannot conclude the trial court abused its discretion.[4] *See id.*

---

[4] The dissent argues this case is not meaningfully distinguishable from *Larson v. Giesenschlag*, another case involving an incarcerated father defending a termination suit. *Post* at ___ (citing *Larson v. Giesenschlag*, 368 S.W.3d 792, 796–98 (Tex. App.—Austin 2012, no pet.)). Larson (the child's father) asked the trial court to postpone the final termination hearing so he could find counsel to represent him, and later asked for appointed counsel. *Larson*, 368 S.W.3d at 794. He also submitted an affidavit and other documents setting out facts and arguments in opposition to the petition. *Id.* at 794–95. The trial court denied his requests, refused to consider his written submissions, and terminated his parental rights. *Id.* at 795. Larson argued on appeal that the trial court's refusal to allow him to participate violated his due process rights. *Id.* at 796. We agreed and held the trial court had abused its discretion by "effectively barring him from presenting his case at trial." *Id.* at 798. The dissent argues that "[a] similar situation occurred here" with Father as the defendant. *Post* at ___. But Father was represented by counsel, who presented his case at trial and opposed the Department's petition, one of the means of participation Larson requested and was denied. This Court did not hold in *Larson* that due process requires that inmates participate through a specific means. *See Larson*, 368 S.W.3d at 798 ("While the trial court was not obligated to allow Larson to participate in any particular manner, it was obligated to allow Larson to participate in some meaningful manner."). Because it is distinguishable, we conclude *Larson* does not compel us to reverse the trial court's judgment of termination.

Having decided Father did not show he was entitled to a bench warrant, we conclude the denial of his motion for a continuance was not an abuse of discretion. *See Villegas*, 711 S.W.2d at 626; *Zeifman*, 322 S.W.3d at 812. We overrule Father's first issue.

## SUFFICIENCY CHALLENGE

The Family Code provides for involuntary termination of parental rights if a court finds that the parent's acts or omissions satisfy at least one statutory ground for termination and that termination is in the child's best interest. Tex. Fam. Code § 161.001(b)(1), (2). The petitioner must prove these matters by "clear and convincing evidence." *Id.* Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. This is an intermediate standard that falls between the preponderance of the evidence standard used in ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re J.D.G.*, 570 S.W.3d 839, 850 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)).

We apply a standard of review on appeal that reflects this heightened burden of proof. *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). The distinction between legal and factual sufficiency review in this context "lies in the extent to which disputed evidence contrary to a finding may be considered." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018). In a legal sufficiency review, the reviewing court "cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding." *Id.* at 630–31. Evidence is legally sufficient if, viewing the disputed and undisputed evidence in this manner, "a

reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* at 631.

A factual sufficiency review, in contrast, requires weighing the disputed evidence against the evidence supporting the finding. *Id.* The reviewing court must consider whether the "disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 267.

**Predicate Finding**

Father challenges the sufficiency of the evidence supporting the trial court's findings under subsections (D), (E), and (O), but he does not address its finding under subsection (Q). *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O), (Q). The trial court's finding under subsection (Q) is sufficient to uphold the judgment because only one finding is required to support termination. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (noting only one predicate finding required to terminate parental rights). We ordinarily would not address the trial court's other predicate findings because appellate courts should not address issues unnecessary to the disposition of an appeal. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). However, the Texas Supreme Court recently decided that due process requires appellate courts to review findings under subsections (D) and (E) even when another ground is sufficient to support termination. *See In re N.G.*, 577 S.W.3d 230, 237

7

(Tex. 2019) (per curiam) ("Allowing section 161.001(b)(1)(D) or (E) findings to go unreviewed on appeal when the parent has presented the issue to the court thus violates the parent's due process and due course of law rights.").[5] We will accordingly address Father's challenges to the trial court's findings under subsection (D) and (E).

Subsection 161.001(b)(1)(D) authorizes termination if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(D). Subsection 161.001(b)(1)(E) authorizes termination if the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* § 161.001(b)(1)(E). In this context, "endanger," means "to expose to loss or injury; to jeopardize." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (quoting *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," but it is not necessary that the conduct was directed at the child or that the child actually suffered injury. *Id*.

Subsections (D) and (E) differ in respect to the source of the danger to the child. Subsection (D) focuses on the child's physical environment, "although the environment

---

[5] The Court reached this holding because terminating parental rights under subsection (D) or (E) can result in termination of the parent's rights to other children. Subsection (M) authorizes termination if the parent previously "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)." Tex. Fam. Code § 161.001(b)(1)(M). An appellate court's refusal to review a challenged subsection (D) or (E) finding thus "eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children." *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam). To ensure parents receive the "meaningful appeal" due process requires, appellate courts must review challenged subsection (D) or (E) findings even when, as here, the trial court made another finding that is sufficient to uphold the judgment. *See id.* at 235, 237; *In re Z.M.M.*, 577 S.W.3d 541, 543 (Tex. 2019) (per curiam).

produced by the conduct of the parent[] bears on the determination of whether the child's surroundings threaten his well-being." *In re M.D.M.*, 579 S.W.3d 744, 764 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (quoting *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)). In contrast, subsection (E) focuses on danger posed by the parent's conduct. *Id.* A single act or omission can support termination under subsection (D), but termination under subsection (E) must be based on "a voluntary, deliberate, and conscious course of conduct." *Id.*

"As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re J.O.A.*, 283 S.W.3d 336, 345 n.4 (Tex. 2009) (citation omitted). Evidence of a parent's criminal history, convictions, and resulting imprisonment may establish an endangering course of conduct. *In re J.S.*, 584 S.W.3d 622, 635 (Tex. App.—Houston [1st Dist.] 2019, no pet.). Evidence of domestic violence is also relevant to endangerment, even if the violence is not directed at the child. *In re P.W.*, 579 S.W.3d 713, 727 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Furthermore, domestic violence "may produce an environment that endangers the physical or emotional well-being of a child" supporting termination under subsection (D). *Id.*

Mother testified that Father physically abused her for ten years, sometimes in front of the children. When asked to describe the degree of violence, she replied: "I don't know how I'm still alive today is how bad it was." The violence was constant and ceased only when he went to prison. Carpenter, the Department's caseworker, testified that Father is currently serving a prison sentence for the offense of felon in possession of a firearm. Father was a felon as result of a previous conviction for assaulting one of his older children (not involved in this case). Father does not address whether his conduct endangered the children or created a

9

dangerous environment for them. Instead, he contends too much time has passed for this behavior to be relevant. We reject this argument because the trier of fact is entitled to consider the parent's behavior throughout the lives of the children. *See In re E.C.R.*, 402 S.W.3d 239, 248 n.7 (Tex. 2013) (noting trier of fact can consider parental actions before and after child's birth when determining endangerment) (citing *In re J.O.A.*, 283 S.W.3d at 345). Reviewing the record under the applicable standards, we conclude legally and factually sufficient evidence supports the trial court's finding that Father engaged in a course of conduct that endangered the physical and emotional well-being of the children and that subjected them to a dangerous home environment. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E).

**Best Interest**

We next consider Father's challenge to the trial court's finding that termination is in the best interest of the children. "[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." *Id.* § 263.307(a). There is also a strong but rebuttable presumption that the best interest of the child is served by keeping him or her with their natural parents. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). To determine whether termination serves the child's best interest, we consider factors such as:

- the children's wishes;

- the children's present and future emotional and physical needs;

- any emotional and physical danger to the children now and in the future;

- the parental abilities of the individuals seeking custody;

- the programs available to assist the individuals seeking custody to promote the best interest of the children;

10

- the plans for the children by the individuals or agency seeking custody;

- the stability of the home or proposed placement;

- the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and

- any excuse for the parent's acts or omissions.

*In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)).  The absence of evidence on some of these considerations does not preclude a finding that termination is in the child's best interest, "particularly if the evidence were undisputed that the parental relationship endangered the safety of the child."  *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

Father argues that there is no evidence he would endanger the children because he has not been violent toward them since 2014.  However, "[a] trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest."  *In re B.R.*, 456 S.W.3d 612, 616 (Tex. App.—San Antonio 2015, no pet.).  Mother testified that Father's violence stopped only because he was incarcerated, and there is no dispute that Father has been incarcerated for most of the time since 2014.  The trial court could also consider Father's history of domestic violence against Mother and that the children witnessed some of it.  *See In re M.D.M.*, 579 S.W.3d at 771 (noting evidence of domestic violence in home is relevant to several *Holley* factors).  Moreover, Father's multiple periods of incarceration raise the possibility that he will continue to engage in criminal activity and risk imprisonment in the future.  *See In re J.S.*, 584 S.W.3d at 635 ("Routinely subjecting a child to the probability that she will be left alone because her parent is in jail, endangers the child's

11

physical and emotional well-being." (quoting *In re S.M.*, 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.))).

Father insists that he has maintained a relationship with the children through letters and that there is no evidence they want the relationship to end. There was testimony that the children received his letters, but Carpenter testified that the children expressed to her that they "do not want to have contact with their father" and are afraid of him. Tiffany Jayne, a volunteer with the Court Appointed Special Advocate program, confirmed that the children "consistently" expressed they want no contact with Father. Jayne and Carpenter both testified that the children enjoy a happy and stable life with Cady and recommended terminating Father's rights to remove lingering uncertainty from their lives.

Reviewing the record under the appropriate standards of review and considering the relevant factors, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination is in the best interest of the children. We overrule Father's remaining appellate issues.

## CONCLUSION

We affirm the trial court's judgment.

_____
Edward Smith, Justice

Before Chief Justice Rose, and Justices Triana and Smith
  Dissenting Opinion by Justice Triana

Affirmed

Filed:   December 4, 2019